By the Court.
Campbell, J.
This suit was instituted for the recovery of damages for the publication in the'Courier and Enquirer newspaper, of which the defendant is editor and proprietor, of an alleged libel against the plaintiff.
The defendant pleads that the publication was a true, fair and correct account of public judicial proceedings before a magis-' trate, and the plea contains the affidavit upon which the complaint against the plaintiff was founded, and it further avers that other proceedings were pending before the magistrate, growing out of a complaint made by the plaintiff The replication charges that the complaint was primary and original, and made ex parte, in the absence of the plaintiff, and is false and libellous; and the defendant demurs.
The question presented for our consideration is, whether this publication is privileged.
The question of privilege is one of great delicacy and importance, affecting as it does the independence of legislation, the impartial administration of justice, the proper discharge of off *25 cial duty, the liberty of the press, and the protection of private character. And whenever the law concedes the claim of privilege, it at the same time exercises a watchful care that the enjoyment' of such privilege shall be limited to the necessity of the particular case, and that it shall not be used to the injury of the private character of the citizen.
Thus, in the case of The King v. Lord Abingdon, 1 Espinasse R. 226, it was held that a member of parliament may not, with impunity, publish and circulate a speech containing slanderous charges against an indi vidual,'though such speech was delivered by him in the House of which he was a member. He cannot be called to account for what he does in the discharge of his duties, but if he publishes, he loses his privilege. So, in Lake v. King, 1 Saund. 124, a petition presented to a committee of parliament was ordered to be printed for the use of the members ; bul it was published elsewhere, and such publication was held unjustifiable, because it went beyond that which the privilege of parliament required.
And at a recent day, in the great case of Stockdale v. Hansard, 9 Adolph. & Ellis, 1,(a) the question was presented, whether a report published by order of the House of Commons for the use of the members of that body, and also for sale, and which contained reflections upon the character of the plaintiff, was privileged. The case was argued at great length by the attorney-general on the part of the defendants, acting under instructions of the House of Commons, which body had passed resolutions asserting their privilege in the matter. In his opinion, Lord Detonan, speaking of these resolutions, says, “We are informed that a large majority of that house adopted the assertion. It is not without, the utmost-respect and deference, that I proceed to examine what has been 'promulgated by such high authority. Most willingly would I decline to enter upon an-inquiry which may lead to my differing from that great and powerful assembly. *26 But when one of.my fellow-subjects'presents'himself before-me in this court, demanding justice for an -injury,Ut is not at my option toi grant-or withhold -redress. I aril bound to afford it if the law declares him entitled to it.” The decision of the court was unanimous, that the privilege did not exist, except where the reports or proceedings are published simply for the use of the members. That publications of reports or proceedings for general sale, or distribution, might be inquired into if they-contain unjust reflections -upon private character. The protection of the character of the citizen triumphed ov'er a privilege claimed to have existed for a period ■ so long that it- had become hoary with age. (See Vol. I. Lives of the Lord Chancellors, by Lord Campbell, page 293, Am. ed.,-Life of Sir John Eortescue.)
It.is admitted as a general rule, that a full, fair and correct account of a trial in court is a privileged publication-, and this is the well established law of England and of this country. But “ if a party -is to be allowed,” says Chief-Justice Abbott, (Lewis v. Walters, 4 B. & A. 611,) “ to publish what passes in a court of justice, he must publish the whole case, and not merely state the-conclusion which he himself draws-from ihe-evidence;” and in Flint v. Pike, 4 B & C. 467, a plea that the supposéd libel was in substance a true account and report of- the trial was held bad. In Saunders v. Wills, 6 Bingham 213, a statement of the circumstances of'a trial, given as from- the counsel in the case, rvas held not such a report as is privileged — -and in Delegal v. Heghley, 3 Bingham, N. C. 950, Chief Justice Tindal says': It is an established principle upon which the privilege of publishing a report'of any judicial proceeding is admitted to rest, that such report -must be strictly confined"to -the-actual proceedings in court,-and must contain no defamatory- observations or comments from any quarter whatever, in addition to -what-forms strictly and-properly the legal proceedings.--' So-'it was said in the King v. Carlile, by Chief Justice Abbott; 3 B &-A. 167, “ There can be no doubt in the mind of the court, or of any person acquainted with the law of the country, that if, in the course of a trial, it becomes necessary fop the purposes of justice, that matters of a defamatory nature should be publicly read, it *27 does not therefore follow that it is competent to any person under the pretence of publishing that trial, to re-utter the defamatory matterand so was the law held to be in that case by all the judges. See also the observations of Lord Ellen-borough and Grose, J., on the argument in Styles v. Nohes, 7 East, 503.
In Thomas v. Croswell, 7 John. 272, Spencer, J., says: “ there is not a dictum to be met with in the books that a man under pretence of publishing the proceedings of a court of justice, may discol'or and garble.the proceedings by his own comments and constructions, so as to effect the purpose of aspersing the character of those concerned.” In the case of Clement v. Lewis, 3 Brod. & Bing. 297, the heading of the articles was, “ shameful conduct of an attorney.” The defendant justified, on the ground that the alleged libel contained a faithful and true account of the several proceedings therein stated, had in the insolvent debtor’s court, and on some of the pleas, the jury found in favor of the defendant. But the court of King’s Bench held that the words at the head of the article formed no part of the proceedings in the debtor’s court, and on this point, the judgment, in-the exchequer chamber on error, was affirmed on the argument of the cause.
•In the case now before us, the heading of the article was “extorting money to hush up a complaint.” If the proceedings had taken place in court, on the trial of the case, and the witness had given the testimony substantially as stated in his affidavit, still that part of the publication would not have been privileged. But this was no trial. The publication in, question purports to give the substance of two complaints, made at different times, and on entirely different grounds; the latter complaint, made by the defendant in the first complaint against the plaintiff in this suit and a police officer, charging that they had offered, for a bribe, to have the first complaint dismissed; the plaintiff in this suit having been the prosecutor in the first complaint. The one complaint was no answer to the other. Each would be sustained, if sustained at all, on different evidence; and for aught that appears, if the charges were true, both parties must be con *28 victed. It is in no sense a trial — a fair, correct and impartial account of which, should carry forth to the world, without comment, the testimony which rebutted, as well as that which sustained the complaint, the direction of the court and the verdict of the jury.
"We now come to the most material and important question, whether the publication of such preliminary ex parte proceedings before a magistrate is privileged. Lord Hardwicke remarked, 2d Atk. 267, “ Nor is there any thing of more pernicious consequence than to prejudice the minds of the public against persons concerned' as parties in causes, before the cause, is finally heard;” and Lord Ellenborough, in an action for publishing an account of preliminary proceedings before a magistrate in King v. Fisher, 2 Campb. 563, says: “Jurors and judges are still but men y they cannot always control feeling excited by such inflammatory language. If they are exposed to be thus warped and misled, injustice must sometimes be done. Trials at law, fairly reported, although they may occasionally prove injurious to individuals, have been held to be privileged. Let them continue so privileged. The benefit they produce is great and permanent, and the evil that arises from them is rare and incidental. . But these preliminary examinations have no such privilege. Their only tendency is to prejudge those whom the law.still presumes to be innocent, and to poison -the sources of justice. It is of infinite importance to us all, that whatever has a tendency to prevent a fair trial should be guarded against. Every one of us may be questioned in a court of law and called upon to defend his life and character. "We would then wish to meet a jury of our countrymen with unbiassed minds. But for this there can be no security, if such publications are permitted.”
In the great case of Duncan v. Thwaites, 3 B. & Cresswell, 556, this right was fully considered. The defendants, the proprietors of the London Morning Herald, were sued for a similar publication. They pleaded, amongst other things, that the supposed libels-were nothing more than fair, true, and, correct reports in the newspaper called the Morning Herald, of pro *29 ceedings which took place publicly and openly, before the magistrate at the public police office at Bow-street; and they insisted that they were privileged to make such publication. The unanimous decision of the court was pronounced by Chief Justice Abbott, who, after remarking that the case had been argued with much learning on both sides, and that all the decisions and opinions of judges that have any bearing on the question had been quoted, adds: “ It may be sufficient to say of them, that there is not any one plainly supporting the affirmative of this proposition, and that there are many expressly declaring the negative. This court has, on more than one occasion, within a few years, been called uponvto express its opinion judicially, on the publication of preliminary and ex parte proceedings; and has on every occasion delivered its judgment against the legality of such proceedings, as was done by Mr. Justice Heath, in the year 1804, in the ease of the King v. Lee, 5 Espinasse, 123. Other judges have delivered opinions to the same effect; and it is well known that many other persons have lamented- the inconvenience and the mischievous tendency of such publications. They were, within the memory of many persons now living, rare and unfrequent; they have gradually increased in number, and now are unhappily become very frequent and numerous. But they are not on that account the less unlawful, nor is it less thé duty of those to whom the administration of justice is intrusted, to express their judgment against them.” Mr. Starkie, referring to some of these cases, says; “The publication also, of ex parte proceedings in criminal cases, is not only not privileged by the law, but is regarded as a great misdemeánor.” ' (1 Starkie on Slander, 265; Holt’s Law of Libel, 172 and 173, and notes, Am. ed.; Cook’s Law of Defamation, 45.)
I have thus run over a'few of-the prominent cases relative to privileged publications, and in doing so have preferred to quote the language of the decisions, as uttered by several of the distinguished men, who during the last half century have shed light and lustre on English jurisprudence. It is believed that no one, who will carefully examine the subject, can fail to perceive- *30 that under the enlightened administration of the law, the freedom of the press has not been curtailed, but gradually enlarged; at the same time that the circle of protection to private character has been materially increased.. Under the recent statute, 6 & 7 Victoria, c. 96, § 6, the truth may be given in evidence in criminal prosecutions for libel, if the same was published with good motives and for justifiable ends; so that there, as here, the press is free to publish, being responsible, as man is to his fellow-man in the ordinary affairs of'life, for the injuries which he wantonly or maliciously inflicts.
We are not aware that the question presented for our consideration has evér before arisen in this state, but the authorities and the arguments which sustain them, and which we have in part referred too, are too strong to be resisted, and we must give them our entire assent. It is our boast that we are governed by that just and salutary rule upon which security of life and character often depends — that every man is presumed innocent of crimes charged upon "him until he is proved guilty. But the circulation of charges founded on ex parte testimony, of statements made — often under excitement: — by .persons smarting under real or fancied wrongs,.may prejudice the public mind, and cause the judgment of conviction to be passed long before the day of trial has arrived. When that day of trial comes, the rule has been reversed, and the presumption of guilt has been substituted for the presumption of innocence. The chances of a fair and impartial trial are diminished. Suppose the charge to be entirely groundless. If every preliminary ex parte complaint which may be made before' a police magistrate, may, with entire impunity, be published and scattered broadcast over the land, then the character of the innocent who may be the victim of a conspiracy, or of charges proved afterwards to have arisen entirely from misapprehension, may be cloven down, without any malice on ■ the part of the publisher. • The refutation of slander in such cases generally follows its propagation at distant intervals, and brings often but an imperfect balm to wounds which have become festered and perhaps incurable.
*31 It is not to be denied that occasionally the publication of such proceedings is productive of .good, and promotes the ends of justice. But in such cases the publisher must find his justification not in privilege, but the truth of the charges.' The necessity of this salutary rule is further evident from the fact that of these complaints a large portion are never prosecuted even to trial, much less to conviction.
It would be difficult to point out a complete remedy for the evil, which exists with us .as in England. ■ The law, which we consider well settled, and which we repeat and lay down in this case, that the publication of such preliminary ex parte proceedings is unauthorized and not privileged, if observed and enforced, would do something. A sound public opinioh would do more — -an opinion which should encourage that homely doctrine of diligent attention to one’s own affairs, and of thinking no evil of others except as a knowledge of such evil is forced upon us by business or by duty — an opinion which frowns upon those who pander to and nourish with daily food that morbid curiosity which finds its aliment in the frailties and vices of our race.
Demurrer overruled with costs.

 The decision in this case was given in May, 1839, and in April, 1840, parliament passed au act which virtually restored the privilege. (See Cook’s Law of Defamation, 185.) * ‘ !